IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CHARLES SAMUEL JOHNSON JR.                                            PLAINTIFF

v.                                    Civil No. 4:19-cv-04111

NURSE KING, Miller County Detention Center
("MCDC"); and CAPTAIN ADAMS, MCDC;                                    DEFENDANTS

**REPORT AND RECOMMENDATION**

This is a civil rights action filed *pro* se by Plaintiff, Charles Samuel Johnson, Jr., under 42 U.S.C. § 1983. Before the Court are summary judgment motions filed by Defendant Captain Adams (ECF No. 58) and Defendant Nurse King. (ECF No. 62). Plaintiff has filed Responses to each motion. (ECF Nos. 66, 68).[1] Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

**I.   FACTUAL BACKROUND**

Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC"), Eastern Arkansas Regional Unit. His claims in this action arise from alleged incidents that occurred in 2016 while he was incarcerated in the Miller County Detention Center ("MCDC"). At the time of the events in question, Defendant Adams was a Captain employed at the MCDC and Defendant King was a registered nurse employed by Southern Health Partners Inc. ("SHP"), the third-party medical provider for the MCDC. (ECF No. 63-1, pp. 1-2).

Plaintiff was arrested and booked into the MCDC on June 17, 2016. (ECF No. 60-2, p. 1). Plaintiff's Admission History and Physical ("H&P") was performed on June 20, 2016. (ECF No.

---

[1] Plaintiff also filed a Statement of Disputed Facts in response to Defendant King's recitation of the facts. (ECF No. 67).

1

71). During the H&P Plaintiff complained of "voiding blood, passing stones, and burning sensations." (ECF No. 71-2, p. 2). On June 23, 2016, the jail nurse practitioner ordered Plaintiff to undergo a urinalysis and analysis of a kidney stone. *Id.* at p. 3. Plaintiff was placed on Motrin 800 mg twice a day for pain.

On July 14, 2016, Plaintiff was seen by the jail nurse practitioner for complaints of discoloration of his left toenail. (ECF No. 71-2, pp. 3, 6). He was diagnosed with a fungal infection of the toenail and prescribed Lamisil.[2] A comprehensive metabolic panel (blood test) was also ordered. *Id.* at p. 5.

On July 21, 2016, Plaintiff was brought to the infirmary for bleeding around his testicles. Plaintiff was treated by Defendant King for his complaints. (ECF No. 71-2, p. 8).

On August 1, 2016, Plaintiff submitted Medical Request #1,089,279 stating, "Mrs. Moore has told me that my account was charged on 6/23/16 again on 7/13/16 an also on 7/21/16 can you tell me why would was my account charged for when it should not have been. Can you please explain why my money is missing of my tiger account. (thank You)". (ECF No. 71-2, p. 9). The following day, Defendant King responded to the request stating, "You have been seen in the infirmary for complaints of kidney stone, problem with a fungus on your toe, bleeding from scratching yourself, seizures for a bottom rack pass. The charges are correct and will not be refunded." *Id.*

On August 30, 2016, at 7:00 p.m., Plaintiff submitted Grievance #1,159,669 stating, "On 8/30/16 as I was being led down the hall way after a argument with Officer Tefft I was pulled by Officer Hensley even though I was walking on my own. When we got to Max-E where I'm being housed at Officer Hensley grabs me by my throut at my adams apple an procceds to choke me."

---

[2] Lamisil is an anti-fungal medication.

(ECF No. 63-2, p. 2).  Later that same day at approximately 8:49 p.m. Plaintiff submitted Medical Request #1,159,981, stating: "I need to see the dotor a bout my throat ofter being chocked by officer Hensley."  (ECF No. 60-3, p. 1).

On the morning of August 31, 2016, Defendant King saw Plaintiff at pill pass and observed no evidence of bruising to Plaintiff's neck, no difficulty breathing, and no signs of distress.  (ECF No. 63-1, pp. 1-2).  After Defendant King returned to the infirmary, he responded to Plaintiff's Medical Request #1,159,981 denying his request to see a doctor stating, "You weren't choked, request denied."  (ECF No. 60-3, p. 1).

On August 31, 2016, Plaintiff submitted Grievance #1,162,678 stating, "I was just denied medical attention by Nurse King stemming from a incident yesterday (8/30/16) where I was choked by Officer Hensley."  (ECF No. 60-3, p. 13).  The following day, an unidentified grievance officer responded to Grievance #1,159,669 in which Plaintiff accused Officer Hensley of choking him stating, "We take allegations such as the one you have made very seriously.  We would like to remind you that disciplinary action will be taken against you if it is found that you have made false allegations.  We also want to assure you that if necessary, appropriate measures will be taken to address your concerns."  (ECF No. 63-3, p. 2).

On September 6, 2016, Defendant Adams responded to Plaintiff's grievance stating, "When and where did the incident take place where the officer had to use force?"  *Id.*  Plaintiff never responded to Defendant Adams' request for more information about the incident.

In September of 2016, Plaintiff submitted two medical requests concerning his blood pressure. (ECF No. 60-3, pp. 2-3).  On December 10, 2016, Plaintiff submitted a medical request pertaining to his medication.  (ECF No. 60-3, p. 4).  During January of 2017, Plaintiff submitted

eight medical requests concerning his mental health, blood pressure, and acid reflux. (ECF No. 60-3, pp. 5-12).

On February 27, 2017, Plaintiff was released from the MCDC and transferred to the ADC. (ECF No. 60-2, p. 1). From February 27, 2017 through July 9, 2018, while in the custody of the ADC, Plaintiff submitted numerous medical requests none of which related to any throat injury from the alleged choking incident. Plaintiff was evaluated and treated by the ADC's medical personnel on at least twenty (20) separate occasions and never mentioned any injury to his throat. (ECF No. 60-5, pp. 1-26).

## II. POLICIES AND PROCEDURES

The MCDC has policies in place regarding the treatment of inmates including but not limited to procedures for providing medical care. The policy provides the MCDC will maintain the health of each inmate at the level of his/her status at the time of incarceration, unless any illness or injury requires immediate attention or is deemed to be life threatening or potentially life threatening. (ECF No. 60-4, p. 1). The MCDC provides regular and emergency medical care and services within the facility at a designated location. The MCDC maintains written agreements with one or more health authorities licensed in the State of Arkansas for this purpose. *Id.*

Inmates in the MCDC have the opportunity each day to request health care services by submitting sick call requests, regardless of housing assignments. Inmate sick call requests are collected daily by the medical supervisor through medical selection on the KIOSKS and triaged during the evening medical rounds by qualified medical personnel for immediacy of need. (ECF No. 60-4, p. 4). Verbal or written sick call requests for non-emergency illnesses/injuries shall be triaged within twenty-four (24) hours (72 hours during weekends) by qualified medical personnel.

Based on physician approved protocols, inmates, when appropriate, shall be scheduled for the next sick call clinic or the next available provider's clinic. The frequency and duration of sick call shall be sufficient to meet the health needs of the inmate population. *Id.*

At all times relevant, SHP was under contract with the MCDC to provide healthcare services to inmates. (ECF No. 63-1, p. 2). According to SHP's policy and procedure manual for health services in jails, all inmate patients must have the opportunity each day to request health care.[3] All inmate patients must complete a Health Request Form (Sick Call Slip) for all services, except emergency medical needs. Medical staff will collect these forms daily during med pass times or gather the forms from a designated area established by the jail. *Id.*

"Sick Call" is defined as a scheduled session by medical staff to assess the health care needs stated by an inmate patient. Those seen on sick call will be brought to the medical unit or a designated confidential area established by the jail. Appropriate medical personnel following proper triage procedures will treat inmate patients. (ECF No. 67, p. 16). Upon receipt of an inmate patient's request to be seen at sick call, the medical staff must comprise a list for the correctional officers of the inmate patients to be seen. All inmate patients requesting to be seen at sick call must be seen. Any inmate patient who is not available for the scheduled sick call time should be reported to the medical staff and a reason for the unavailability given for notation in the inmate patient's medical file. If later follow-up can be performed on the inmate patient, the medical staff should do so.

Sick call is to be held in the medical unit or designated area of the jail based upon established times, or as security may dictate due to schedules, etc. Inmate patients should be seen

---

[3] Defendant King did not provide the Court with a copy of SHP's policy and procedure manual. Instead, Plaintiff submitted one page of the manual relating to non-emergency health care requests and services with his Statement of Disputed Facts. (ECF No. 67, p. 16).

within 24 hours of their request being received by medical staff. (ECF No. 67, p. 16). All sick call slips must be dated and initialed as to when medical staff received them. All treatment orders must be noted on the sick call slip, progress notes, or flow sheet, and any referrals to the Medical Director should be noted with the inmate patient being scheduled for the next available physician sick call. Vital signs must be noted on all patient encounter sick call assessments. *Id.*

SHP does not charge inmates for medical services. Some counties with whom SHP contracts may, at their discretion, charge inmates a co-pay for medical services rendered or for medications administered. SHP renders medical care and administers medication without regard to whether an inmate has money on their books. (ECF No. 71-1, p. 2). It is also the policy, practice, and custom for all employees of SHP to keep accurate medical records, which properly reflect the services performed for each inmate. When charges are submitted for medical services, it is SHP's policy, practice, and custom that the charges are submitted with accuracy. An inmate is never intentionally charged for any service that has not been rendered. (ECF No. 71-1, pp. 2-3).

### III. PROCEDURAL BACKGROUND

On September 5, 2019, Plaintiff filed the instant lawsuit against Defendants Adams and King alleging both Defendants denied him medical care after he was allegedly choked by an MCDC officer on August 30, 2016. (ECF No. 1). Plaintiff also asserted a claim against Defendant King for falsifying medical records in June and July of 2016 resulting in charges to Plaintiff's account for medical services he claims he did not request. *Id.* At the time Plaintiff filed his Complaint, he was in jail awaiting trial on pending criminal charges. *Id.* at p. 3.

On March 12, 2020, Plaintiff filed an Amended Complaint reasserting claims against

Defendants Adams and King and alleging claims for excessive force against several MCDC officers. (ECF No. 33). On June 4, 2020, the Honorable Susan O. Hickey dismissed Plaintiff's claims for excessive force leaving only the claims against Defendants Adams and King. (ECF No. 56).

In Claim One of the Amended Complaint, Plaintiff describes his claim as "violation of due process clause, denial of medical care, abuse of power, deliberate indifference. He alleges on August 30 and 31 of 2016 Defendants Adams and King denied him medical care. Specifically, he states:

> On 8/30/16 I submitted a medical request to medical asking to be seen after being chocked by Officer Hensley, Nurse King denies me medical attention stating that I wasn't chocked. On 8/31/16 I submitted a grievance about Nurse King denial of medical treatment which was answered by Cpt. Adams who states when did a officer have to use force, but he never gets me medical treatment or does anything about the chocking.

(ECF No. 33, p. 5).[4] Plaintiff describes his official capacity claim for Claim One against Defendants Adams and King as follows:

> By not treating me for medical request Nurse King denied me medical & by doing so he also violated policy. By not getting me medical attention after it was brought to his attention that I was chocked Cpt. Adams denied me medical care & doing so violated my rights plus policy.

(ECF No. 33, p. 6).

In Claim Two of the Amended Complaint, Plaintiff describes his claim as "falsifying documents, falsifying medical bills, due process clause violation [on] 6/23/16, 7/13/16, 7/21/16." (ECF No. 33, p. 6).[5] Plaintiff goes on to state, "On these above listed dates Nurse King claim that

---

[4] Plaintiff has not made any specific allegations to support any violation of his due process rights. Accordingly, the Court construes Claim One as a claim for denial of medical care.
[5] Once again, Plaintiff does not make any specific allegations regarding a denial of due process. Instead, the Court

I had doctor visits but my past medical request show no request for medical care on these dates & my inmate account has been charged for these bogus visits." *Id.* He describes his official capacity claim against Defendant King in Claim Two as follows, "by falsifying documents of medical visits & charging my inmate account for these visits Nurse King violated my rights plus policy." *Id.* at p. 7.

On June 17, 2020, Defendant Adams filed a Motion for Summary Judgment arguing he is entitled to summary judgment because: 1) he was not deliberately indifferent to Plaintiff's serious medical needs; 2) he is entitled to qualified immunity; and 3) there is no unconstitutional policy implemented by Miller County that violated Plaintiff rights. (ECF No. 58). On July 9, 2020, Plaintiff filed a Response to the motion arguing Defendant Adams did not answer his grievance concerning his claim he was denied medical care until almost a week after the grievance was submitted, and Defendant Adams is not entitled to qualified immunity because "he had notice of Plaintiff's medical needs & failed to provide him with medical attention, causing him to have to suffer." (ECF No. 68, pp. 4-5). Plaintiff specifically states, "per Southern Health Partners Policy & Procedure Manual for Health Services in Jails…I'm to be seen when I submit a sick [request]…" *Id.* at p. 5.

On June 26, 2020, Defendant King filed a Motion for Summary Judgment arguing: 1) he was not deliberately indifferent to Plaintiff's serious medical needs; and 2) he is not liable to Plaintiff in his official capacity. (ECF No. 62). On July 9, 2020, Plaintiff filed a Response and Statement of Disputed Facts stating Defendant King did not evaluate or treat him at sick call, Plaintiff did suffer physical injury to his throat, and Defendant King falsified "medical visit's for the dates of 6/23/16, 7/13/16 & 6/21/16 & charged my inmate account for those visits." (ECF Nos.

---

construes Claim Two as one for misrepresentation and deceit regarding Plaintiff's medical records and charges.

8

66, 67).

On July 15, 2020, the Court ordered Defendant King to supplement his summary judgment motion to address Plaintiff's claim regarding falsifying medical records and charging Plaintiff for services he did not request. (ECF No. 69). On July 17, 2020, Defendant King filed a Supplemental Brief and Statement of Facts (ECF Nos. 70, 71) arguing: 1) he did not falsify medical records or billing, or violate Plaintiff's constitutional rights by charging him for medical services; 2) no policy or custom of SHP was unconstitutional, fraudulent or violative of Plaintiff's due process rights; and 3) Plaintiff's claims based on falsification of medical records and billing and the charges associated with that billing are barred by the statute of limitations. (ECF No. 70).

On September 14, 2020, Plaintiff filed responses to Defendant King's Supplemental Brief and Statement of Facts. (ECF Nos. 82, 83). Plaintiff claims Defendant King and SHP provided services to him based on complaints Plaintiff made during his H & P assessment and therefore, because he did not submit a separate sick call for these issues, he was fraudulently charged for services. (ECF No. 83, p. 1).

## IV. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine

9

issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing, *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## V. DISCUSSION

### A. Denial of Medical Care

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). This prohibition applies equally to pretrial detainees. *Butler v. Fletcher,* 465 F.3d 340, 345 (8th Cir. 2006). To prevail on his claim of denial of medical care, Plaintiff must prove Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

10

To show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted). To establish the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Medical Services,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted). A plaintiff must show that an official "actually knew of but deliberately disregarded his serious medical need." *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). However, intentionally denying or delaying access to medical care may constitute deliberate indifference. *See Estelle,* 429 U.S. at 104-05; *Dulany*, 132 F.3d at 1239.

Here, the summary judgment record demonstrates Plaintiff's alleged injury to his throat did not constitute a serious medical need. Plaintiff submitted one medical request on August 30, 2016, which stated, "I need to see dotor about my throat ofter being chocked by officer Hensley." (ECF No. 60-3, p.1). The next morning, Defendant King saw Plaintiff during pill call and Plaintiff asked him about his request for a sick call concerning his throat. (ECF No. 67, p.1). According to the affidavit of Defendant King, "I saw Mr. Johnson at pill pass and observed no evidence of bruising to Plaintiff's neck, no difficulty breathing, and no signs of distress. Upon returning to the infirmary I responded to Mr. Johnson's Health Service Request, denying his request to see a doctor." (ECF No. 63-1, pp. 1-2).

11

On August 31, 2016, Plaintiff submitted a grievance stating, "I was just denied medical attention by Nurse king stemming from a incident yesterday (8/30/16) where I was choked by Officer Hensley." (ECF No. 60-3, p. 13). Defendant Adams responded to Plaintiff's grievance on September 6, 2016, asking Plaintiff, "When and where did the incident take place where the officer had to use force?" *Id.* Although Defendant Adams took six days to respond to Plaintiff's grievance, Plaintiff did not respond to Defendant Adams' question asking for more information, nor did he submit any additional medical requests regarding the injury to his throat.

Plaintiff's alleged injury to his throat was not diagnosed by a physician nor was the alleged injury so obvious even a layperson would recognize the necessity for a doctor's attention. In fact, the summary judgment record reveals even Plaintiff was not concerned with the injury to his throat after August of 2016. From August 31, 2016 through January 28, 2017, Plaintiff submitted approximately eleven medical requests concerning his blood pressure, medication, mental health and acid reflux. (ECF No. 60-3, pp. 2-12). Then, once he was transferred to the ADC Plaintiff submitted medical requests and was evaluated and treated by ADC medical on at least twenty (20) occasions. (ECF No. 60-5, pp. 1-26). None of these requests mentioned anything relating to the alleged injury to his throat on August 30, 2016.

Accordingly, the Court finds Plaintiff's alleged throat injury does not constitute a serious medical need. Therefore, I recommend Defendants Adams and King be granted summary judgment on Plaintiff's claim regarding denial of medical care.

**B. Falsification of Medical Records**

Plaintiff alleges Defendant King violated his constitutional rights in June and July of 2016 when he falsified medical records and bills and charged Plaintiff for medical services for which

Plaintiff never submitted a separate sick call. Defendant King argues these claims are without merit and are barred by the statute of limitations.

First, nothing in the Eighth Amendment requires the government to provide at no cost a commodity that would not be free outside the prison and that the inmate has the legal means to purchase. *Mills v. Smith,* No. 2:18-CV-02200, 2019 WL 1446992, at *4 (W.D. Ark. Apr. 1, 2019). If a prison official withholds necessary medical care from an inmate with a serious medical need who cannot afford to pay, the official's action would violate the inmate's constitutional rights, but insisting an inmate with sufficient funds pay for his own medical care is neither deliberate indifference nor punishment. *Id.* It is not a federal constitutional violation to require prisoners to pay for medical services if they can afford to do so. *Roberson v. Bradshaw,* 198 F.3d 645, 647 (8th Cir. 1999).

In addition, Plaintiff's claims against Defendant King for falsifying documents on June 23, 2016, July 13, 2016, and July 21, 2016, resulting in "bogus" charges for medical services are barred by the statute of limitations. Section 1983 claims are governed by the personal injury statute of limitations of the state where the claim arose and, in Arkansas, that is three years. Ark. Code Ann. § 16-56-105 (2005); *Miller v. Norris*, 247 F.3d 736, 739 (8th Cir. 2001). Here, the events at issue occurred in June and July of 2016. Plaintiff's initial Complaint was not filed until September 5, 2020. Accordingly, I recommend Plaintiff's claims based on falsifying documents and falsifying medical bills be dismissed.

### C. Official Capacity Claims

Plaintiff also sues Defendants in their official capacities. Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch*, 152 F.3d 907,

914 (8th Cir. 1998). Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendant Adams are treated as claims against Miller County. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish liability on the part of Miller County under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted).

Likewise, when a government contracts with a third-party to fulfill a constitutional duty – such as providing medical care - official-capacity claims against the third-party's employees are treated as claims against the third-party itself. *See Cannady v. Cradduck*, 2016 WL 4432704, at *1-*2 (W.D. Ark. Aug. 18, 2016) (finding that official-capacity claims against employees of a third party medical provider are treated as claims against the company because Benton County contracted with the company to provide healthcare to County prisoners"). To sustain an official-capacity claim against such an entity a plaintiff "must show that there was a policy custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (involving a § 1983 claim against a prison medical provider). Thus, Plaintiff's official-capacity claims against Defendant King are "functionally equivalent" to alleging his employer, SHP, had "a policy, custom, or [took an] official action" that deprived him of constitutionally adequate medical care. *Veatch,* 627 F.3d at 1275*; Johnson*, 452 F.3d at 973.

The summary judgment record confirms the MCDC and SHP had written policies in place governing how and when medical care is provided to inmates. Plaintiff has not alleged any policy, practice, or custom of Miller County or SHP contributed to the alleged violation of Plaintiff's constitutional rights. Instead he argues Defendants failed to abide by the policies of their employers and then goes on to restate the ways he believes his constitutional rights were violated by the individual actions, or lack thereof, by Defendants Adams and King. Accordingly, Plaintiff's official capacity claims against Defendants fail as a matter of law and I recommend they be granted summary judgment on those claims. *Id.* [6]

## VI. CONCLUSION

For the reasons stated above, I recommend Defendants Adams and King's Motions for Summary Judgment (ECF Nos. 58, 62) be **GRANTED** and all remaining individual and official capacity claims against Defendants be **DISMISSED and this case be DISMISSED WITH PREJUDICE**.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 2nd day of October 2020.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

---

[6] Because the Court has found Defendants did not violate Plaintiff's constitutional rights it is not necessary to address the issue of qualified immunity.